UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVE THOMAS, as Guardian ad Litem on behalf of JONATHAN THOMAS,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO, et al.,<br><br>Defendants. | Case No.: 3:15-cv-02232-L-AGS<br><br>**ORDER DENYING DEFENDANT JORGE NARANJO'S MOTION [Doc. 46] TO DISMISS** |

Pending before the Court is Defendant Jorge Naranjo's ("Naranjo") motion to dismiss the First Amended Complaint as to him. Pursuant to Civil Local Rule 7.1(d)(1), the Court decides the matter on the papers submitted and without oral argument. For the foregoing reasons, the Court **DENIES** Naranjo's motion to dismiss.

//
//
//
//
//
//
//

## I. BACKGROUND

This litigation arises from a young man named Jonathan Thomas ("Thomas") attempting suicide by jumping off an upper tier of an inmate housing unit. Thomas has suffered from a variety of mental disorders throughout his life. He has been diagnosed with epilepsy, mania, depression, and schizophrenia. Because of his disorders, Thomas has experienced hallucinations and delusions daily and has attempted suicide on multiple occasions. Such troubles led Thomas' father Dave to conclude that Thomas required the constant observation of mental health professionals. Dave therefore checked Thomas into a home that provided twenty-four-hour monitoring and therapy.

A few months after admission, Thomas attempted to set a small couch on fire inside of the psychiatric home. He was subsequently arrested for arson of an inhabited structure and sent to detention to await sentencing. While in detention, Thomas attempted suicide twice by jumping off the second tier of his housing unit. Shortly after the second suicide attempt, Thomas pled guilty to arson of an inhabited structure and received a sentence of three years. Two years into his sentence, Thomas was transferred to Atascadero State Hospital ("ASH"), because the authorities found that he represented a substantial danger of physical harm to himself and others. Thomas' commitment to this mental institution has been involuntarily extended for a period of one year on three occasions.

In October of 2014, Thomas was transferred to San Diego Central Jail (the "Jail") to await a routine court hearing before the San Diego Superior Court. In connection with this transfer, the Jail received notification of Thomas' previous suicide attempts. The Jail also received discharge papers from ASH that noted his medical conditions, stated he had attempted suicide twice by jumping off upper housing tiers and ordered that Thomas receive "intensive psychiatric care" and "close psychiatric supervision." Under these circumstances, Jail policy required Thomas be placed on "Suicide Precautions" and housed in a lower bunk on a lower tier and placed under heightened observation. However, the Jail staff decided to house Thomas on an upper tier of a housing area

comparable in supervision levels to conditions in general population. Thomas again jumped from the upper tier, sustaining substantial injuries.

Defendant Naranjo was involved in the decision to house Thomas on an upper tier under normal supervision levels. Specifically, Naranjo was a psychiatrist at the Jail. He received and reviewed the above mentioned documentation of Thomas' medical disorders and previous suicide attempts. Despite knowledge of Thomas' problems and history of attempting suicide by jumping off upper tiers, Naranjo approved Thomas for housing on the upper tier under supervisory conditions similar to general population.

On October 6, 2015, Thomas' father ("Plaintiff") filed a complaint on behalf of his son against the County of San Diego, Dr. Alfred Joshua–the San Diego Chief Medical Officer for the Sheriff's Detention Services, and William D. Gore–the Sheriff of San Diego County. The Complaint alleged claims under 42 U.S.C. § 1983 for cruel and unusual punishment against all Defendants and negligence against Defendants Alfred Joshua and William D. Gore. (See Compl.) Plaintiff subsequently moved for leave to file an amended complaint adding Jail employed nurses Larry Deguzman, Mary Montelibano, and Marylene Allen; doctors Rick Leigh Malaguti and Jorge Naranjo; Deputy David Guzman; and Public Defender Connie Magana. Defendants opposed, arguing, *inter alia*, that the proposed first amended complaint would be futile because the statute of limitations had run as to the added defendants and the amended complaint would not relate back under California's DOE pleading doctrine. The Court found that the proposed first amended complaint would relate back and granted Plaintiff's motion.

Plaintiff has filed the First Amended Complaint. (FAC [Doc. 38].) Naranjo now moves to dismiss the First Amended Complaint as to him. (MTD [Doc. 46].) Plaintiff opposes. (Opp'n [Doc. 55].)

//
//
//
//

## II. LEGAL STANDARD

The court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983). The court must assume the truth of all factual allegations and "construe them in the light most favorable to [the nonmoving party]." *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002); *see also Walleri v. Fed. Home Loan Bank of Seattle*, 83 F.2d 1575, 1580 (9th Cir. 1996).

As the Supreme Court explained, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007) (internal citations and quotation marks omitted). Instead, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 1965. A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

//
//
//
//
//
//
//
//
//
//

## III. DISCUSSION

The First Amended Complaint lists Naranjo as a Defendant on the first and fifth causes of action only. The first cause of action alleges deliberate indifference to a serious medical need in violation of the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983. The fifth cause of action alleges negligence. Naranjo seeks dismissal of both claims on the grounds that they are untimely under the applicable statutes of limitations. Naranjo further seeks dismissal of the first cause of action under the theory that he was not deliberately indifferent and, even if he was, such deliberate indifference was not a causal factor of Thomas' injury. Neither argument is persuasive.

As to the statute of limitations argument, Naranjo is correct that the causes of action against him are untimely if the First Amended Complaint does not relate back to the time Plaintiff filed the original Complaint. However, in ruling on Plaintiff's motion for leave to file the First Amended Complaint, the Court already held that the First Amended Complaint would relate back under Fed. R. Civ. P. 15(c)(1)(A) and the California DOE pleading doctrine. (April 20, 2017 Order [Doc. 37].) Naranjo nevertheless argues that this holding no longer applies to Naranjo because the Summons [Doc. 39], (which was generated by the Clerk of Court and names Naranjo as a Defendant) does not indicate that Naranjo was previously an unnamed DOE Defendant.

Naranjo fails to cite a single authority suggesting that a defendant added under the DOE doctrine must specifically be labeled in the summons as a previous DOE defendant. Nor is there any policy reason for such a requirement given that the summons informs Naranjo that he is now a defendant and it is entirely clear on the docket that he was added under the DOE doctrine. Accordingly, the Court finds that the first and fifth causes of action against Naranjo are timely because they relate back to the filing of the original complaint.

As to the deliberate indifference claim, Naranjo argues that, as a matter of law, the required elements of intent and causation are lacking. To adequately plead a deliberate indifference claim based on inadequate medical care, a detained person need

only allege that a medical provider was aware of and disregarded his serious medical need. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Suicidal ideations constitute a serious medical need. *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1017–18 (9th Cir. 2009). Here, Naranjo reviewed documentation showing that Thomas had a history of attempting suicide by jumping off upper tier housing units. Notwithstanding, Naranjo violated Jail policy and assigned Thomas to an upper tier housing unit with general population level supervision. Construing all allegations in favor of Plaintiff, the Court finds that the First Amended Complaint plausibly alleges that Naranjo was deliberately indifferent to Thomas' suicidal tendencies.

Next, Naranjo argues that, even if Naranjo's decision to assign Thomas to an upper tier amounted to deliberate indifference, such deliberate indifference did not cause Thomas' injury. Specifically, Naranjo argues that causation is severed because other Jail personnel could have changed Thomas' housing assignment. This argument strains credulity. It is akin to arguing that one who drowns a victim by pushing them into a pool is not to blame because a bystander could have come to the victim's rescue. In other words, from the fact that there was more than one cause of Thomas' injury, it does not follow that Naranjo's decision was not a necessary link in the chain of causation.

## IV. CONCLUSION & ORDER

For the foregoing reasons, the Court **DENIES** Naranjo's motion to dismiss.

**IT IS SO ORDERED.**

Dated: September 6, 2017

_____
Hon. M. James Lorenz
United States District Judge

6

3:15-cv-02232-L-AGS