UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVE THOMAS, as Guardian ad Litem on behalf of JONATHAN THOMAS,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO, et al.,<br><br>Defendants. | Case No.: 3:15-cv-02232-L-AGS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT CONNIE MAGANA'S MOTION [Doc. 60] TO DISMISS** |

Pending before the Court is Defendant Connie Magana's ("Magana") motion to dismiss. Pursuant to Civil Local Rule 7.1(d)(1), the Court decides the matter on the papers submitted and without oral argument. For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Magana's motion.

//
//
//
//
//
//
//

1

# I. BACKGROUND

This litigation arises from a young man named Jonathan Thomas ("Thomas") attempting suicide by jumping off an upper tier of an inmate housing unit. Thomas has suffered from a variety of mental disorders throughout his life. He has been diagnosed with epilepsy, mania, depression, and schizophrenia. Because of his disorders, Thomas has experienced hallucinations and delusions daily and has attempted suicide on multiple occasions. Such troubles led Thomas' father ("Plaintiff")[1] to conclude that Thomas required the constant observation of mental health professionals. Dave therefore checked Thomas into a home that provided twenty-four-hour monitoring and therapy.

A few months after admission, Thomas attempted to set a small couch on fire inside of the psychiatric home. He was subsequently arrested for arson of an inhabited structure and sent to pretrial detention. While in detention, Thomas attempted suicide twice by jumping off the second tier of his housing unit. Shortly after the second suicide attempt, Thomas pled guilty to arson of an inhabited structure and received a sentence of three years. Two years into his sentence, Thomas was transferred to Atascadero State Hospital ("ASH"), because the authorities found that he represented a substantial danger of physical harm to himself and others. Thomas' commitment to this mental institution has been involuntarily extended for a period of one year on three occasions.

In October of 2014, Thomas was transferred to San Diego Central Jail (the "Jail") to await a routine court hearing before the San Diego Superior Court. Upon learning that his son had been transferred to the Jail, Plaintiff called the San Diego County Office of the Public Defender. Plaintiff spoke with defendant Magana who, though never counsel to Thomas, was a supervising public defender. Plaintiff told Magana that "[Thomas] had jumped twice from a top tier cell in the past and that if [Thomas] was housed on a top tier again, he would jump." (FAC [Doc. 38] ¶ 11.) Magana responded by saying that

---

[1] Thomas' father is suing as guardian ad litem on his son's behalf.

"[Thomas] is in a place where that can't happen" and then hung up. (Id.)  Shortly after Magana hung up, Plaintiff's friend Joanne Bailey called Magana and repeated the warning about Thomas' history of jumping off upper tiers.  Magana responded by stating "those things just don't happen there.  I will inform the proper personnel."  (Id. ¶ 12.)  Despite this assurance, Plaintiff alleges, based on a review of Jail records, that Magana did not adequately relay these warnings to Jail staff.  (Id. 31.)  Jail staff decided to house Thomas in PSU Mainline, an upper tier of a housing area comparable in supervision levels to general population.  Thomas again jumped from the upper tier, sustaining substantial injuries.

On October 6, 2015, Plaintiff filed a complaint on behalf of his son against the County of San Diego, Dr. Alfred Joshua–the San Diego Chief Medical Officer for the Sheriff's Detention Services, and William D. Gore–the Sheriff of San Diego County.  The Complaint alleged claims under 42 U.S.C. § 1983 for cruel and unusual punishment against all Defendants and negligence against Defendants Alfred Joshua and William D. Gore. (See Compl.)  Plaintiff subsequently moved for leave to file an amended complaint adding Jail employed nurses Larry Deguzman, Mary Montelibano, and Marylene Allen; doctors Rick Leigh Malaguti and Jorge Naranjo; Deputy David Guzman; and Magana.  The Court granted this motion and Plaintiff has filed the First Amended Complaint.  (FAC [Doc. 38].)  Magana now move to dismiss the First Amended Complaint as to her.  (MTD [Doc. 60].)  Plaintiff opposes.  (Opp'n [Doc. 63].)

## II.  LEGAL STANDARD

The court must dismiss a cause of action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983).  The court must assume the truth of all factual allegations and "construe them in the light most favorable to [the nonmoving party]." *Gompper v. VISX,*

*Inc.*, 298 F.3d 893, 895 (9th Cir. 2002); *see also Walleri v. Fed. Home Loan Bank of Seattle*, 83 F.2d 1575, 1580 (9th Cir. 1996).

As the Supreme Court explained, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007) (internal citations and quotation marks omitted). Instead, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 1965. A complaint may be dismissed as a matter of law either for lack of a cognizable legal theory or for insufficient facts under a cognizable theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

**III. DISCUSSION**

The First Amended Complaint names Magana on the first and fifth causes of action only. The first cause of action alleges deliberate indifference to a serious medical need in violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983. The fifth cause of action alleges negligence.

**A. 42 U.S.C. § 1983**

Magana contends she cannot be liable under 42 U.S.C. § 1983 because she was not acting under color of state law. As a general matter, a public defender is not acting under color of state law when undertaking the traditional role as counsel to a criminal defendant. *Polk County v. Dodson*, 454 U.S. 312, 325 (1981). The rationale behind this standard is the fact that, when serving an individual client as counsel, a public defender is postured as an adversary to state action. *Id.* at 322 n.13. However, a public defender can be liable for certain administrative actions unrelated to the representation of a specific client. *Miranda v. Clark Cnty of Nevada*, 319 F.3d 465 (9th Cir. 2003). Thus, in *Miranda,* the Ninth Circuit held that the administrative head of a public defender's office

was acting under color of state law when he instituted a policy of polygraphing all criminal defendants and devoting less resources to defendants whose results suggested they were guilty of the charged crime. *Miranda*, 319 F. 3d at 469. In so holding, the Ninth Circuit emphasized that this type of a macro-level decision amounted to policymaking action. *Id.* at 469–70.

Here, by contrast, Magana's actions of agreeing to contact Jail personnel but allegedly failing to properly execute do not amount to policymaking action. Magana was not performing an administrative task unrelated to the legal representation of any specific client. Rather, her action involved an undertaking to help protect one specific client from state action. Thus, like the associate public defender in *Miranda*, she was not acting under color of state law and is therefore not properly named as a Defendant under 42 U.S.C. § 1983. The Court **GRANTS** Magana's motion to dismiss as to the first cause of action.

### B. <u>Negligence</u>

To sustain a negligence claim, a plaintiff must show (1) a duty of care owed to plaintiff; (2) defendant's breach of that duty; (3) proximate cause between the breach and (4) plaintiff's injury. *Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1339 (1998). Magana argues that Plaintiff has failed to allege the duty of care or proximate cause elements.

As to the duty of care element, Plaintiff concedes that Magana did not owe a duty of care prior to representing that she would notify the appropriate personnel of Thomas' proclivity for attempting suicide by jumping from the upper tier. (Opp'n 16.) However, under the good Samaritan doctrine, one who had no initial duty to come to another's aid can assume such a duty if (1) they undertake to provide aid and (2), in so doing, induce another to rely on such undertaking to their detriment. *Williams v. State of California*, 34 Cal. 3d 18, 23 (1983).

Here, the first element of the good Samaritan doctrine is clearly met as Magana stated "I will inform the proper personnel." Construing all allegations in favor of Plaintiff, the Court finds the second element met too. From the fact that (1) Plaintiff and Joanne Bailey quit calling Magana only after she represented she would convey their warning and (2) Plaintiff did not subsequently contact the Jail, it appears that Plaintiff in fact relied on Magana's undertaking to pass the warning along to the proper personnel. Furthermore, Plaintiff alleges that, had Magana properly followed through, Thomas would not have been able to again attempt suicide by jumping as he would have been housed in a safer situation.

Magana also argues that, even if she breached a duty owed to Plaintiff, such breach was not a proximate cause of Thomas' decision to jump. This argument consists only of assertions that it was not reasonably foreseeable that Thomas would attempt suicide by jumping and Magana did not have direct control over Thomas' housing assignment. These arguments are unpersuasive. In light of Plaintiff's explicit warnings that Thomas would jump if housed on an upper tier and a history including two such jumps, the Court simply cannot hold, as a matter of law, that it was not reasonably foreseeable that Thomas would do exactly that if given the opportunity. And though it appears true that Magana lacked direct control over Thomas' housing assignment, Plaintiff has alleged that the Jail would have housed Thomas in a safer situation had Magana properly conveyed Thomas' warnings. Accordingly, the Court **DENIES** Magana's motion to dismiss as to the fifth cause of action.

//
//
//
//
//
//
//

## IV. CONCLUSION & ORDER

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Magana's motion to dismiss as follows:

- The first cause of action is dismissed as to Magana.
- The fifth cause of action may proceed against Magana.

**IT IS SO ORDERED.**

Dated: September 19, 2017

_____
Hon. M. James Lorenz
United States District Judge