THOMAS E. MONTGOMERY, County Counsel
County of San Diego
By ROBERT A. ORTIZ, Senior Deputy (SBN 246849)
1600 Pacific Highway, Room 355
San Diego, California 92101-2469
Telephone: (619) 531- 5279
E-mail: robert.ortiz@sdcounty.ca.gov

Attorneys for Defendants County of San Diego, William D. Gore, Alfred Joshua, M.D., Larry DeGuzman, David Guzman and Mary Montelibano

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVE THOMAS, as Guardian ad Litem on behalf of JONATHAN THOMAS,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>COUNTY OF SAN DIEGO, WILLIAM D. GORE, individually; ALFRED JOSHUA, individually; and DOES 1 through 100, inclusive,<br><br>　　　　Defendants. | No. 15cv2232-L-AGS<br><br>**DECLARATION OF ALFRED JOSHUA, M.D., IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>Date: October 22, 2018<br>Time: 10:30 a.m.<br>Judge: Hon. M. James Lorenz<br>Dept: 5B<br><br>NO ORAL ARGUMENT UNLESS ORDERED BY COURT |

I, Alfred Joshua, M.D., declare:

1.　I have knowledge of the matters set forth herein and could competently testify thereto if called upon.

2.　I was the Chief Medical Officer for the San Diego Sheriff's Department and oversaw all of the medical and mental health care provided in the County detention facilities from November 2013 through June 2018.

3.　I earned my Bachelor of Science degree at Sophie Davis School of Biomedical Education, my MD from Upstate University at Syracuse, and earned an MBA in Healthcare Administration from UC Irvine. I am also a board certified Emergency Medicine Physician. I have received a Certification for Certified Correctional Health

1  Professional (CCHP) from the National Commission on Correctional Healthcare. I have
2  also received the CCHP physician specialty certification (CCHP-P). As of November
3  2017, there are only around 70 correctional physicians across the country who has
4  received that designation.

5      4. The County maintains electronic medical records and paper records for all
6  inmates incarcerated in County detention facilities. The medical staff and contract
7  physicians that treat inmates in the County detention facilities make notations at the time
8  of treatment, or shortly thereafter. Those records are maintained electronically in the
9  normal course of business through the County's Jail Information Management System
10 ("JIMS"). Attached as **Exhibits J, K and R** to the Notice of Lodgment in Support of
11 Defendants' Motion for Summary Judgment, or in the Alternative, Partial Summary
12 Judgment, are true and correct copies of relevant excerpts from Plaintiff Jonathan
13 Thomas' JIMS records, which reflect treatment he received while incarcerated in County
14 jails.

15     5. The policies, procedures, and training at San Diego Central Jail ("SDCJ")
16 where Mr. Thomas was transferred in October 2014 met the applicable state standards for
17 providing medical and mental health care when SDCJ passed Title 15 regulations,
18 including the regulations involving the provisions of mental health treatment and treating
19 suicidal inmates. SDCJ also met the California Department of Corrections and
20 Rehabilitation Bi-Annual Review, which is a mandated comprehensive inspection
21 conducted by the California Standard Authority to ensure the County jails meet the
22 minimum standards for detentions services.

23     6. The nursing staff within SDCJ at the time of the events referenced in Mr.
24 Thomas's Amended Complaint were trained on the policies and procedures for safety cell
25 placement and the Psychiatric Stabilization Unit ("PSU"). A physician order is required
26 for PSU placement based on a Welfare and Institutions Code section 5150 order
27 ("5150"). All inmates admitted to the PSU under 5150 must meet the criteria set forth in
28 the statute.

7. On or about October 14, 2014, Mr. Thomas was medically screened by registered nurses as part of a multi-stage screening process upon intake to SDCJ. During the intake medical screening, per County policy, procedure, and training the intake nurses evaluate the inmate's physical, medical, and psychological condition based on the inmate's statements and responses to a lengthy questionnaire, as well the inmate's appearance, behavior, and presentation.

8. Additionally, inmates in County jails have access to medical and mental health care if they request it, or if they display symptoms/behaviors warning staff that the inmate requires care. Inmates can submit a medical request slip and they will be scheduled to be seen by the appropriate provider. Additionally, if there is a medical or mental health emergency, an inmate can request that correctional or medical staff help them get immediate medical treatment. When inmates are in their cells, there are call buttons the inmates can press to speak directly to a deputy if they have an urgent need for treatment.

9. The County nursing staff were provided with appropriate in-custody behavior training, including how to identify, treat, and elevate mental health concerns. At the time of the incident on November 6, 2014, medical staff were trained to identify inmates presenting with suicidal ideations and to provide immediate, appropriate care to those inmates. The contract psychiatrists who treated Mr. Thomas were oriented to the County's policies and practices.

///
///
///
///
///
///
///
///

10. While suicide risks in jail facilities can be mitigated, it cannot be entirely eliminated. Clinical staff is only able to work with the information provided by the patient, family, and other sources to make decisions that do not deviate from the standard of care.

11. For acutely suicidal individuals, the jail has safety cells (padded rooms with no furniture, a hole in the floor with a grate for a toilet and safety garments that cannot be torn). It is not the within the standard of care or the County policies and procedures to indiscriminately place an inmate in a safety cell indefinitely or inpatient psychiatric hospitalizations. If that were the standard of care, it would create an environment where patients were afraid to access mental health services for fear of punitive measures and would create a more dangerous environment for all patients.

12. The psychiatrist who evaluated Mr. Thomas determined that he was not acutely suicidal and did not meet the criteria under Welfare and Institutions Code to be placed on a 5150 hold (i.e. danger to self, others, or grave disability), as noted by the assessment of the psychiatrist who evaluated him.

13. Thus, based on the available clinical information and Mr. Thomas' presentation, he was not sent to special mental health housing and was instead housed in the sixth floor psychiatric unit. The sixth floor houses inmates with mental health issues that require specialized housing but do not qualify for housing in the PSU. This housing is referred to as a psychiatric stepdown unit or outpatient psychiatric housing. It would have been an unacceptable practice and violated Mr. Thomas' rights as a patient to automatically place him into a safety cell or PSU without regard to his clinical presentation and the treatment provider's independent clinical judgment.

14. I did not provide direct patient care nor personally provided any treatment to the Plaintiff.

///

///

///

1  I declare under penalty of perjury under the laws of the State of California that the
2  foregoing is true and correct and that this Declaration was executed on September 10,
3  2018 at San Diego, California.

_____
ALFRED JOSHUA, M.D.