THOMAS E. MONTGOMERY, County Counsel
County of San Diego
By ROBERT A. ORTIZ, Senior Deputy (SBN 246849)
1600 Pacific Highway, Room 355
San Diego, California 92101-2469
Telephone: (619) 531- 5279
E-mail: robert.ortiz@sdcounty.ca.gov

Attorneys for Defendants County of San Diego, William D. Gore, Alfred Joshua, M.D., Larry DeGuzman, David Guzman and Mary Montelibano

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVE THOMAS, as Guardian ad Litem on behalf of JONATHAN THOMAS,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO, WILLIAM D. GORE, individually; ALFRED JOSHUA, individually; and DOES 1 through 100, inclusive,<br><br>Defendants. | No.15cv2232-L-AGS<br><br>**DECLARATION OF ASSISTANT SHERIFF JOHN INGRASSIA IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>Date: October 22, 2018<br>Time: 10:30 a.m.<br>Judge: Hon. M. James Lorenz<br>Dept: 5B<br><br>NO ORAL ARGUMENT UNLESS ORDERED BY COURT |

I, John Ingrassia, declare:

1. I have personal knowledge of the matters set forth herein and could competently testify thereto if called upon.

2. I am an Assistant Sheriff with the San Diego Sheriff's Department and currently manage the Sheriff's Detention Services Bureau. I previously served as Facility Commander of various detention facilities, managed the department's Jail Population Management Unit, Detentions Training Unit, and Detentions Support Division.

///

3. I have 28 years of corrections and law enforcement experience, training, knowledge of San Diego County Sheriff's Department detentions operations, practices, and procedures.

4. On November 6, 2014, while incarcerated at the San Diego Central Jail ("SDCJ") Jonathan Thomas dropped down from the second tier of his assigned housing unit. Mr. Thomas contends that the psychiatric services provided at SDCJ were deficient and that sworn staff failed to properly house him during his incarceration.

5. In regards to training, from the onset of their career, every detentions deputy receives training related to dealing with mentally ill offenders. Module 15.2 of the Sheriff's Detention Academy consists of a 2.5-hour block titled Mental Health Issues. Instructional objectives of the block include, but are not limited to, identifying signs of mental health issues in inmates, signs and symptoms of inmates posing a suicide risk, and deputies' responsibilities when dealing with at risk inmates. Deputies are also issued a deputy's notebook that includes suicide prevention information for quick reference.

6. Once completing the Academy, deputies receive ongoing training and education related to mental health issues and suicide prevention practices. Since 2009, a heavy emphasis has been placed on continuous mental health training for jail staff. This training is accomplished in the form of required briefing training, formal training bulletins, and courses completed as part of each deputy's state mandated 24 hours of annual training. Training objectives include providing deputies with information to recognize and differentiate inmates that may be confused, psychotic, depressed, or have a personality disorder.

7. The California state standards and regulations regarding minimum jail standards is known as Title 15. Title 15 requires the Board of State and Community Corrections ("BSCC") personnel to conduct physical plant inspections of local detention facilities on a biennial basis. Furthermore, the County Health Officer is required to inspect the facilities on an annual basis.

8. The two most recent BSCC biennial physical plant inspections of SDCJ occurred on August 16, 2013 and April 26, 2016. The facility passed inspections on both occasions. For the 2013 inspection, the Field Representative noted as follows:

- "Interviews with inmates disclosed that they felt safe and that mandated activities such as recreation, visits, clothing exchange, etc., were being met. Inmates assured us that medical staff was responsive to their requests and expressed no complaints about the grievance or disciplinary process."
- "The facility was clean and appeared well maintained. No issues of non-compliance with Title15 regulations were identified."

9. Title 15: Article 5 requires each administrator to develop and implement a written classification plan designed to assign inmates to housing units and activities according to the categories of sex, age, criminal sophistication, seriousness of crime charged, physical or mental health needs, assaultive/non-assaultive behavior, and other criterion that will provide for the safety of inmates and staff. The Sheriff's Department had policies and procedures in place and a dedicated unit responsible for ensuring compliance with this regulation. The BSCC reviewed the Sheriff Department's policies and procedures for classification in place at the time Mr. Thomas was incarcerated and determined the policies and procedures complied with Title 15. Mr. Thomas was classified and housed according to these policies and in compliance with Title 15.

10. The determination to place inmates in special housing because of medical or mental health needs, including the Psychiatric Stabilization Unit ("PSU"), is made by medical and psychiatric staff based upon the context of their ongoing evaluations. The decision is not made by classification deputies like David Guzman. Mr. Thomas was housed on the sixth floor at SDCJ based on the medical staff review of his mental health issues. The sixth floor houses inmates with mental health issues that may be at risk if housed in general population units. This housing is referred to as a psychiatric stepdown unit or outpatient psychiatric housing. Stepdown and outpatient is referring to the fact

inmates assigned to these units do not qualify for housing in the PSU but do need special housing.

11. Plaintiffs contend Mr. Thomas should have been housed in a cell with heightened or continual monitoring based upon his prior suicide attempts. Title 15: Article 11 details the requirements for medical and mental health services provided to all inmates. The Sheriff's Department has policies and procedures in place that meet or exceed these requirements. Mr. Thomas was evaluated prior to being accepted for booking at SDCJ.

12. Sheriff's Detention Policy and Procedure section M.9 II. B. states, "All arrestees who are suicidal or have a history of prior suicide attempts shall be identified in the Jail Information Management System ("JIMS") with the Administrative Alert code "PSA"." Sworn staff are responsible for reviewing the JIMS web report listing all inmates with the alert code PSA to become familiar with the at-risk inmates identified by medical staff and to make sure they are housed appropriately. This is just one example of the ongoing communication that takes place between medical and sworn staff. In addition, sworn and medical staff work collaboratively on the Bureau's Policy and Procedures Committee. This group meets periodically throughout the year to discuss needed or required policy changes. Input from the various disciplines is important to determine and mitigate the impact any changes will have on each employee classification. Finally, the Detention Services Bureau Manager's Meeting occurs the second Tuesday of every month. This meeting includes sworn and professional staff managers from each detention facility, the Assistant Sheriff and Commanders from the Detention Services Bureau, and the Chief Medical Officer and Medical Administrator for the Medical Services Division. At this meeting, policies and pressing issues are discussed and direction is given to address identified concerns.

13. The Sheriff's Department also had a policy in place at the time Mr. Thomas was incarcerated describing the detention "Inmate Suicide Prevention Practices." It provided that sworn staff (Sheriff's deputies and supervisors) were required to

"immediately notify medical staff and keep any inmate under close observation when that inmate presents a potential danger to self, danger to others or unable to care for self." The policy provided that "the nature and extent of the problem shall be described and documented." With regard to inmates exhibiting suicidal behavior after intake, "[a]ll reports of suicide shall be considered serious." At that time, and it is still the practice and training of the Sheriff's Department, that deputies were to have an inmate assessed by medical if there was an indication that the inmate might harm themselves and for the deputy to record the actions they took. There is, and was, a nurse scheduled to work at the SDCJ at all times.

14.  Sheriff's Detention Policy and Procedures section I.64 requires sworn staff to complete security checks (11-53's) of all housing units on an hourly basis. These checks are documented in JIMS. While conducting 11-53's, staff are required to look for obvious signs of medical distress, trauma, or criminal activity. In addition to observing the safety and welfare of the inmates, sworn staff must be attentive to security and maintenance issues. Staff interact with the inmate population more frequently than just during the hourly checks. Sheriff's Detention Policy and Procedure section I.43 details procedures related to inmate counts. The purpose of these counts is to establish a uniform procedure for physically counting and verifying the well-being of all inmates within the facility, and accounting for all inmates who are temporarily out of the facility. At SDCJ, a minimum of six counts are conducted each day. Staff are required to make JIMS log entries for daily activities completed, such as 11-53's and inmate counts. Furthermore, staff interact with inmates during nursing rounds, laundry exchange, commissary deliveries, mail delivery and numerous other activities. There are no JIMS entries or documented events involving Mr. Thomas after his admission to SDCJ on October 14, 2014 but prior to the November 6, 2014 incident to indicate that Mr. Thomas was acutely suicidal, had expressed any suicidal ideation or engaged in behavior demonstrating suicidal ideation.

///

15. In addition to making JIMS log entries to document activities, staff also document daily events and observations on Inmate Incident Reports and Crime Reports. Sheriff's Detention Policy and Procedure section F.5 requires that Incident Reports be written for reasons such as a change in an inmate's status due to an inmate request or individual problem. There were no incident reports involving Mr. Thomas after his admission to SDCJ on October 14, 2014 but prior to the November 6, 2014 incident to indicate that Mr. Thomas was acutely suicidal, had expressed any suicidal ideation or engaged in behavior demonstrating suicidal ideation.

16. In order to ensure the previously stated policies and procedures are adhered to, a number of auditing mechanisms are in place. For instance, at the end of each shift supervisors complete an audit of all JIMS log entries made during the shift. More specifically, supervisors look at the start and end times of each 11-53 to make sure they were completed and done on time. Facility administrative staff conducts periodic audits of all log entries and review video footage to confirm items logged were performed. While reviewing video footage of security checks, staff reviews the quality of the checks to confirm deputies stop at all cells and look into them as required by current policy. Supervisors are also required to complete facility walkthroughs of the entire facility to ensure policies are being followed and the needs of the inmates are being met. In addition to the biennial BSCC inspections to ensure compliance with Title 15, the Department's Division of Inspectional Services staff complete quarterly audits of detention facility operations.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this Declaration was executed on September 7, 2018 at San Diego, California.

ASST. SHERIFF JOHN INGRASSIA

6

15cv2232-L-AGS