UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVE THOMAS, as Guardian ad Litem on behalf of JONATHAN THOMAS,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SAN DIEGO et al.,<br><br>Defendants. | Case No.: 3:15-cv-2232-L-AGS<br><br>**ORDER:**<br><br>**(1) GRANTING DR. NARANJO'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 107];**<br><br>**(2) GRANTING DR. MALAGUTI'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 108];**<br><br>**(3) DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT [ECF NO. 109]; AND**<br><br>**(4) GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT BY DEFENDANTS COUNTY OF SAN DIEGO AND REMAINING INDIVIDUAL DEFENDANTS [ECF NO. 112]** |

Pending before the Court are four separate motions for summary judgment filed by different parties in this case [ECF Nos. 107, 108, 109, 112].[1] Pursuant to Civil Local Rule 7.1(d)(1), the Court decides these matters on the papers submitted and without oral argument. For the reasons stated below, the Court **GRANTS** Defendants Naranjo and Malaguti's motions [ECF Nos. 107, 108], **DENIES** Plaintiff's motion, and **GRANTS IN PART** and **DENIES IN PART** the summary judgment motion filed by Defendants County of San Diego and remaining individual defendants [ECF No. 112].

## I. BACKGROUND[2]

In 2008, Jonathan Thomas ("Thomas") was arrested after setting a sofa on fire at his group home. On February 2, 2009, Thomas pleaded guilty to arson of an inhabited structure in violation of California Penal Code section 451(b). Accordingly, Thomas was sentenced to three years in county jail. While incarcerated, mental health issues such as schizophrenia, anxiety, and bipolar disorder plagued Plaintiff.

While in custody, Plaintiff attempted suicide twice between 2008 and 2009, jumping off the jail's top tier railing both times. The first suicide attempt occurred, on August 7, 2008, in George Bailey Detention Center ("GBDC") after Thomas threatened to "kill himself by jumping off the [second] floor." Thomas was then transported to and treated for ten days at UCSD hospital. Upon release, Thomas was transferred to county jail and admitted to the Psychiatric Security Unit ("PSU") after again threatening suicide. On January 22, 2009, Thomas again attempted to commit suicide by jumping feetfirst off the top tier after climbing over the railing of the stairs about seven or eight steps high.

On February 2, 2011, Thomas was admitted to Atascadero State Hospital ("ASH") pursuant to California Penal Code section 2962 as a mentally disordered offender

---

[1] ECF No. 111 was docketed in error as a pending motion. However, review of ECF No. 111 reveals that it is merely the notice of motion for summary judgment or partial summary judgment filed by Defendants County of San Diego, William D. Gore, Alfred Joshua, M.D., Larry DeGuzman, and Mary Montelibano [ECF No. 112]. As such, the pending status of ECF No. 111 shall be terminated by the Clerk's Office.
[2] Components of this background have been adopted from the Court's earlier orders.

("MDO"). Thomas' commitment to this mental institution was involuntarily extended for a period of one year on three separate occasions.

On October 14, 2014, Thomas was transferred from ASH to San Diego Central Jail (the "Jail") to await a re-commitment hearing before the San Diego Superior Court. In connection with this transfer, the Jail received discharge papers from ASH that noted, *inter alia*, Thomas' MDO status, medical conditions, current mental status, reason for release, current medications, and recommended that Thomas receive "intensive psychiatric care" and "close psychiatric supervision." That day, multiple defendants assessed Thomas during a multi-level intake process. Thomas was then housed on the sixth floor of the Jail in a room on the lower tier.

On October 18, 2014, Defendant Ricki Leigh Malaguti, M.D. ("Dr. Malaguti") examined Thomas after reviewing all available records and interviewing Thomas in person. Dr. Malaguti noted that Thomas' mood was good, he had no suicidal or homicidal ideation, and had no commanding or bothersome auditory hallucinations. Dr. Malaguti planned for Thomas to continue his medications as prescribed by ASH and scheduled a follow-up assessment to be conducted in 14 days. On October 30, 2014, Thomas declined service of his scheduled follow up psychiatric visit. Thomas subsequently jumped from the top tier of his housing unit in the Jail on November 6, 2014, shattering his pelvis and breaking legs.

On October 6, 2015, Dave Thomas, Thomas' father ("Plaintiff"), filed a complaint on behalf of his son against the County of San Diego, Dr. Alfred Joshua–the San Diego Chief Medical Officer for the Sheriff's Detention Services, and William D. Gore–the Sheriff of San Diego County. *See* ECF No. 1. Upon the Court's leave, on April 20, 2017, Plaintiff filed an Amended Complaint alleging 42 U.S.C. § 1983 claims for cruel and unusual punishment under the Fourteenth Amendment stemming from a deliberate indifference to a serious medical need against Defendants RN Deguzman, RN Montelibano, RN Guzman, Dr. Naranjo, and Dr. Malaguti, cruel and unusual punishment arising under the Eighth and Fourteenth Amendment against Defendant County of San Diego for its mental health and suicide prevention policies and failure to train staff,

respectively, and negligence against the above-mentioned individual Defendants, plus, Defendants William D. Gore and Alfred Joshua, M.D. *See* ECF No. 38.[3]

On September 10, 2018, four separate motions for summary judgment, or in the alternative, partial summary judgment were filed. ECF Nos. 107, 108, 109, 112. Dr. Naranjo Jorge and Dr. Ricki Leigh Malaguti filed individual motions for summary judgment, or in the alternative, partial summary judgment. *See* ECF Nos. 107, 108. Plaintiff filed a motion for partial summary judgment. ECF No. 109. Defendants County of San Diego and the remaining individual defendants filed a motion for summary judgment, or in the alternative, partial summary judgment. ECF No. 112. Each motion was opposed, and all motions are fully briefed.

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

Where "the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *See C.A.R. Transp. Brokerage Co., Inc. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In this instance, the moving party must first establish that no genuine issue of fact exists on an issue material to its case. *See id.*

Conversely, where the moving party does *not* have the ultimate burden of persuasion at trial, it "has both the initial burden of production and the ultimate burden of persuasion

---

[3] Defendants Connie Magana and Maylene Allen were dismissed from this action without prejudice upon joint motion. *See* ECF No. 85.

on a motion for summary judgment." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000) (citation omitted) (emphasis added). To satisfy its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *See Celotex*, 477 U.S. at 331. As such, the moving party would be entitled to summary judgment as a matter of law if the nonmoving party does not present sufficient evidence to support its claim. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

If the moving party fails to discharge its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970). If the moving party meets the initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elect. Indus. Co., Ltd. v Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the nonmoving party must "go beyond the pleadings" and by "the depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

### B. Deliberate Indifference

To maintain an Eight Amendment claim, under 42 U.S.C. § 1983, based on prison medical treatment, a plaintiff must show "deliberate indifference to serious medical needs." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendant's response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (internal quotation marks and citations omitted). "[The] second prong—defendant's response to the need was deliberately indifferent—is satisfied by (a) a

purposeful act or failure to respond to plaintiff's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096 (internal citations omitted). An "inadvertent [or negligent] failure to provide adequate medical care" alone does not state a claim under § 1983. *Id.* at 1096 (citing *Estelle*, 429 U.S. at 105). An inmate must "make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety." *Lemire v. Cal. Dept. of Corrections and Rehabilitation*, 726 F.3d 1062, 1074 (9th Cir. 2013) (internal citation omitted). To satisfy this subjective component of deliberate indifference, an inmate must show that prison officials "kn[e]w [] of and disregard[ed]" the substantial risk of harm . . . "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* (Quoting *Farmer v. Brennan*, 511 U.S. 825, 837, 842 (1994)).

Although not the law at the relevant time here, the Ninth Circuit now instructs courts to weigh claims amounting to violations of the right to adequate medical care "brought by pretrial detainees against individual defendants under the Fourteenth Amendment" on an objective deliberate indifference standard. *Gordon v. Cty. Of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018) (quoting *Castro v. Cty. Of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016)). A plaintiff must prove the following elements when asserting an adequate medical care claim against an individual defendant under the Fourteenth Amendment:

> "(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries."

*Id.* at 1125. The "mere lack of due care by a state official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment." *Castro*, 833 F.3d at 1071 (internal quotation marks and citation omitted). Thus, the plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.*

## III. DISCUSSION

In the interest of clarity and due consideration, the Court analyzes each motion for summary judgment separately below.

### A. Motion for Summary Judgment - Dr. Jorge Naranjo [ECF No. 107]

Dr. Naranjo contends that the evidence does not demonstrate that Dr. Naranjo had a duty or ability to alter Thomas' housing assignment. ECF No. 107-1 at 9. Specifically, Dr. Naranjo contends the evidence fails to show his awareness, at the time he bridged Thomas' medications, of a substantial risk of self-harm by Thomas such that it would require Thomas' housing assignment to be altered. *See* ECF No. 107-1 at 10-11, 13. As such, the Court examines the evidence to determine whether Plaintiff provided sufficient evidence to show Dr. Naranjo's subjective awareness of the substantial risk of self-harm by Thomas when he bridged Thomas' medications.

Plaintiff rebuts that county policy requires all staff to identify any potential suicidal feelings and behaviors exhibited by an inmate patient. ECF No. 124 at 16 (citing ECF No. 124 at 279[4]). Plaintiff contends that Thomas could have been committed to a Lanterman-Petris-Short Act ("LPS") unit under the county's PSU Admission Types policy which allows a treating physician to make a housing recommendation when assessing Thomas. *Id.*; *see also* ECF No. 124 at 26. Plaintiff's policy contentions are misguided. It is undisputed that Dr. Naranjo was the bridging psychiatrist, not the treating psychiatrist, and therefore the propriety of his actions was not contemplated in the PSU Admissions policy Plaintiff cites. The Court finds that the evidence does not show that Dr. Naranjo was aware of a substantial risk that Thomas would engage in self-harm if not transferred to the PSU. Plaintiff points to evidence, without citation, intimating that Dr. Naranjo should have known Thomas' risk for tier jumping due to Thomas' attempted suicide history. However, Plaintiff did not provide recent evidence showing Thomas was a suicide risk besides the

---

[4] Exhibit 25 is the San Diego County Sheriff's Department Medical Services Division Policy and Procedure Manual – Suicide Prevention & Precaution Program.

attempts over five years earlier. The Court notes that Thomas underwent a re-commitment multiple times, and Plaintiff failed to show that Thomas' constitutional rights were violated when housed during earlier re-commitment transfers. Moreover, Plaintiff's expert testified that the role of the bridging psychiatrist is limited to bridging medication, obtaining background history, and ordering psychiatric files and charts unless informed of an *imminent* danger to the inmate or other. *See* ECF No. 139 at 88-93. Plaintiff has not presented evidence showing Thomas was in imminent danger when his medications were bridged by Dr. Naranjo. As such, the Court finds that Plaintiff has not demonstrated a genuine issue as to Dr. Naranjo's subjective awareness of substantial risk of harm to Thomas at the time he bridged his medications. Accordingly, Dr. Naranjo is entitled to summary judgment.

Dr. Naranjo also asserts that Plaintiff cannot a claim for medical negligence against him for the same reasons. *Id.* at 14. Plaintiff similarly fails to provide evidence to create a genuine issue. Therefore, for the reasons stated above, Dr. Naranjo's motion for summary judgment is GRANTED as to Plaintiff's section 1983 and medical negligence claims.

**B.     Motion for Summary Judgment – Dr. Ricki Leigh Malaguti  [ECF No. 108]**

Similarly, Dr. Malaguti contends the evidence demonstrates that he was not aware Thomas was in serious medical need of PSU housing to prevent a suicide attempt when Dr. Malaguti evaluated Thomas. Dr. Malaguti supports this contention with Dr. Daniel's deposition testimony, which confirmed that Thomas could not recall being suicidal when Dr. Malaguti evaluated him. *See* ECF No. 108-1 at Exh. E. Additional evidence shows that the most recent available record, Dr. Kolan's ASH discharge summary, did not highlight that Thomas had a substantial risk of suicide if left untreated. *See* ECF No. 108-1 at Exh. A. In fact, Dr. Kolan primarily noted that, at that time, Thomas struggled with mania symptoms, denied any suicidal or homicidal ideation, had a good mood, was cooperative, and was able to take care of his basic activities of daily living. *See id.*

8

Notably, the intensive psychiatric care recommended by Dr. Kolan was to address Thomas' mania and anxiety symptoms, not any risk of self-harm. *Id.* In his in-person interview of Thomas, Dr. Malaguti noted that Thomas had no suicidal ideation. *See* ECF No. 125 at Exh. 1. While Dr. Malaguti noted that Thomas attempted suicide many times, Thomas admitted the last attempt was "a couple years ago." *See id.* In light of the evidence, the Court finds that Dr. Malaguti satisfied its burden of production by producing evidence that negates the essential element of Plaintiff's claim. Accordingly, Plaintiff must now show there is a genuine issue for trial.

In opposition, Plaintiff fails to raise specific facts to demonstrate a genuine issue would exist at trial. Plaintiff concedes that Thomas did not tell Dr. Malaguti that he was suicidal during the evaluation. ECF No. 125 at 14. Plaintiff contends that Dr. Malaguti should have known that Thomas was at a substantial risk of attempting suicide due to Thomas' prior suicide attempt record and a threat to harm himself from 2008. *See id.* at 45-48. However, Dr. Malaguti's evaluation also included review of available records for Thomas and a face-to-face interview. ECF No. 108-2 at 16. Presumably, the March 12, 2015 Admission Psychological Assessment completed by Dr. Deborah Hewitt was included in those records. *See* ECF No. 124 at 36-38. In that report, Thomas' suicide attempt history was noted, Plaintiff reported that his suicide attempts were only a result of command auditory hallucinations, and it was noted that Thomas had been assessed a low risk of suicide since February 2011. *See id.* Lastly, Plaintiff relies on Dr. Daniel's expert opinion that a reasonable psychiatrist would have housed Thomas in a single-tier location given his tier-jumping history. Plaintiff's correctional expert opines that Dr. Malaguti should have housed Plaintiff where he could be regularly monitored. ECF No. 125 at 202. However, the Court rejects this opinion as it is not relevant to whether Dr. Malaguti was subjectively aware of a substantial risk of self-harm to Thomas if his housing was not reassigned. Taken together, the Court finds that Plaintiff has not created a genuine issue pertaining to Dr. Malaguti's subjective awareness.

Moreover, even when viewing the evidence in the light most favorable to Plaintiff, the Court finds that the evidence negates Plaintiff's ability to establish a causal link between Dr. Malaguti's decision not to house Thomas in the PSU and his subsequent suicide attempt. Thomas admitted that his suicidal ideation only occurred immediately before jumping due to a commanding, auditory hallucination. ECF No. 108-2 at 41. Thomas' deposition testimony corroborates other evidence indicating that Plaintiff's suicide attempts are generally a result of command auditory hallucinations telling him to harm himself. *See* ECF Nos. 108-2 at 41, 124 at 37. Notwithstanding, even if Thomas was housed in the PSU, there is no evidence showing that he would have been under PSU supervision permanently. As an involuntary penal commitment, Plaintiff could have been discharged as soon as acute involuntary treatment was no longer required. ECF No. 108-2 at 25. Likewise, if Thomas had met the California Welfare and Institutions Code § 5150 standard, he only would have been housed in PSU for fourteen (14) days before reassessment would have been done. Thomas' tier jumping incident occurred outside that statutory timeframe, and Plaintiff has not shown that Thomas would have been housed in the PSU at the time the tier jumping incident occurred. For the foregoing reasons, the Court finds that no genuine issue exists as to the causal link between Dr. Malaguti's actions and Plaintiff's injuries.

Plaintiff also fails to present sufficient evidence to support his negligence claim. As such, the Court GRANTS Dr. Malaguti's motion for summary judgment as to Plaintiff's section 1983 and medical negligence claims.

### C. Motion for Summary Judgment – Dave Thomas [ECF No. 109]

Plaintiff asserts that Thomas should have been afforded more considerate conditions during his confinement as a mentally disordered offender ("MDO"). ECF No. 109 at 15-26. Specifically, Plaintiff contends that Thomas' 14th Amendment rights were violated for the following reasons: (1) Thomas was detained under identical conditions as incarcerated criminals; (2) the County of San Diego's ("County") custom of housing MDOs in the County Jail's general population violates California Penal Code sections 4001 and 4002;

(3) the County failed to develop written policies regarding the referral and care of MDOs; and (4) Thomas was not transferred to an LPS facility as mandated by Title 15. *Id.* Plaintiff also asserts the County violated Thomas' constitutional rights through its deliberate indifference to its suicidal inmates' needs by failing to install fencing or netting around the perimeter of the County jail's top tiers, especially the 6th floor psychiatric unit. ECF No. 109 at 26-30. Specifically, Plaintiff contends the County knew its jails had higher rates of suicides and there was a pattern of similar constitutional violations. *Id.*

For a local governmental entity to be liable under § 1983, a plaintiff must show that "'action pursuant to official municipal policy' caused [his or her] injury." *Connick v. Thompson*, 563 U.S. 51, 60-61 (2011) (citing *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691 (1978)). "Official policy" includes practices so persistent and widespread that they constitute standard operating procedure. *Id.* Likewise, a municipality's failure to train must amount to "deliberate indifference to the rights of persons with whom the [untrained employees] come into contact" to impose § 1983 liability. *Id.* It requires proof that the municipality disregarded a known or obvious consequence of its action or inaction. *Id.* at 1360. A plaintiff generally must show a pattern of similar constitutional violations by untrained employees to establish deliberate indifference for purposes of failure to train. *Id.*

As an initial matter, Plaintiff raises the contentions related to the conditions of Thomas' confinement for the first time at the summary judgment stage. Plaintiff's Amended Complaint only addresses the County's failure to (1) develop policies related to the referral and care of MDOs and (2) install fencing at the County jail to prevent inmate suicide. The Ninth Circuit has repeatedly instructed that plaintiffs may not raise allegations for the first time during summary judgment proceedings. *Russell v. Pacific Motor Trucking Co.*, 672 Fed.Appx. 629, 631 (2016). Accordingly, Plaintiff's motion for summary is DENIED as to each contention except for his lack of or inadequate policies, failure to install fencing, and failure to train contentions.

Plaintiff contends the County's lack of policy related to the referral and care of MDOs violated Thomas' constitutional rights. ECF No. 109 at 24-25. The County responds that Plaintiff's motion fails because it cannot identify an express policy that directed County employee's actions and lacks evidence establishing that the County had an express policy or custom that directed the potentially constitutional violative behavior. ECF No. 121 at 22-23. The Court finds that identification of an express policy is not necessary here where Plaintiff's theory of liability is the County's lack of policy amounts to deliberate indifference to the rights of confined MDOs. Plaintiff presents sufficient evidence to show the County's lack of a written policy relating to the referral and care of MDOs may have had the effect of creating an official policy by which MDOs were customarily housed on the sixth floor at their initial housing classification. *See* ECF Nos. 109-1 at 157, 332-333, 335-336. Plaintiff also demonstrates that the two policies currently in place fail to address a known consequence of the inaction—attempted suicides by County jail inmates. However, the County provides a declaration demonstrating that, since the beginning of 2014, a number of inmate patients transferred from state hospitals to the County jail had been placed in a safety cells, housed in the PSU, or housed in the medical observation units at some point. *See* ECF No. 121-2. While the declaration does not squarely address initial housing classifications, referrals, or care of MDOs, the Court does find this evidence creates a genuine issue relating to whether the County's lack of written MDO referral or care policies created an official policy that was deliberately indifferent to the rights of MDOs. Accordingly, Plaintiff's motion for summary judgment is DENIED as to the *Monell* claim.

Plaintiff also contends the County's failure to install fencing at the County jail to prevent inmate suicide violated Thomas' constitutional rights. ECF No. 109-1 at 26-29. A governmental entity's "'policy of inaction' in light of notice that its program will cause constitutional violations 'is the functional equivalent of a decision by the city itself to violate the Constitution.'" *Connick*, 563 U.S. at 61-62 (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 395 (1989)). "A pattern of similar constitutional violations by

untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Bd. of Cty. Com'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 409 (1997). The County asserts that Plaintiff can neither establish a pattern of similar constitutional violations nor establish a causal link between the lack of fencing and government official's indifference to Thomas' serious medical needs. Plaintiff provides evidence demonstrating that County officials were on notice of inmate suicide being a major concern at the San Diego County Jail. *See* ECF No. 109-1 at 443-44, 446-54, 456-57. Plaintiff claims the number of attempted suicides by tier-jumping between the years of 2013 and 2014 provide compelling pattern of tier-jumping sufficient to put the County on notice that further constitutional violations would occur if fencing was not installed. ECF No. 109-1 at 29. Plaintiff's evidence misses the mark here. Plaintiff fails to show a pattern of constitutional violations and instead provides evidence of a disheartening pattern of attempted suicides in the County jail. Unless evidence exists showing every attempted suicide was a result of a constitutional violation, Plaintiff needs to provide evidence of deliberate indifference to inmates' serious medical needs—suicidal ideations. *See NeSmith v. Cty. Of San Diego*, 2016 WL 4515857, at *16 (S.D. Cal. Jan. 27, 2016) ("[N]ot every suicide that occurs in a jail is a result of a constitutional violation by a deputy or the County[.]"). A failure to install fencing to prevent tier-jumping suicide attempts is not a constitutional violation in and of itself. Plaintiff identified, *inter alia*, multiple factors contributing to the County jail's attempted suicide problem: lack of allocation of funds, lack of staffing, added assignments, time constraints, lack of engagement, lack of training, underdetected/underreported population. *See* ECF No. 109-1 at 445-54. Thus, a failure to install fencing does not, by itself, support Plaintiff's argument that the County had a constitutionally inadequate policy concerning tier-jumping suicide attempts by County jail inmates or that it failed to train County employees. As such, the Court finds that Plaintiff failed to carry his burden at this stage. Therefore, Plaintiff's motion for summary judgment is DENIED as to the *Canton* claim.

### D. Motion for Summary Judgment – County of San Diego and Remaining Individual Defendants ("Defendants")

#### 1. Qualified Immunity

Unless their conduct violates clearly established statutory or constitutional rights, qualified immunity shields government officials from civil damages liability. *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When qualified immunity is raised, the court considers: (1) whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "A government official's conduct violate[s] clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "[E]xisting precedent must have placed the statutory or constitutional question beyond debate." *Id.* The analysis consider the specific context of the particular case. *Saucier* 533 U.S. at 201. If plaintiff meets his burden to prove a clearly established right existed at the time of the challenged conduct, the burden shifts to the defendant to establish his actions were reasonable, irrespective of a possible violation of plaintiff's rights. *Doe v. Petaluma City Sch. Dist.*, 54 F.3d 1447, 1450 (9th Cir. 1995). "[R]egardless of where the constitutional violations, the [official] should prevail if the right asserted by the plaintiff was not 'clearly established' or the [official] could have reasonably believed that his particular conduct was lawful." *Romero v. Kitsap Cty.*, 931 F.2d 624, 627 (9th Cir. 1991).

Defendants assert that Plaintiff's entire § 1983 claim rests on the fact that Thomas engaged in self-harming behavior five to six years prior to the tier-jumping incident. ECF No. 112-1 at 23. Defendants highlight undisputed evidence demonstrating that Thomas, despite his MDO status, was alert and oriented during the intake process, repeatedly denied current suicidal ideation to staff at ASH and psychiatrists at the County jail, and

documented as a low suicide risk in discharge summaries. *Id.* Defendants also point out that no evidence has been presented showing that the individual defendants observed Thomas displaying suicidal behavior or whether Thomas in fact displayed suicidal behavior prior to or during his intake and attempted suicide. *Id.* Taken in the light most favorable to Plaintiff, this evidence still does not demonstrate that Thomas' constitutional rights were violated by not being housed in the PSU upon intake. As such, the Court finds that Defendants would be entitled to summary judgment as a matter of law if Plaintiff does not present sufficient evidence to support his claim.

Plaintiff asserts that the individual defendants' failures to recommend PSU housing for Thomas at intake should not be immunized. ECF No. 126 at 16-19. However, Plaintiff has failed to demonstrate the individual Defendants' actions violated Thomas' constitutional rights. Plaintiff has not provided evidence that Defendant could not reasonably believe that each their actions were reasonable under the circumstances. To the extent Plaintiff contends the conditions of confinement violated Thomas' constitutional rights, the Court rejects the contention as it is first raised at the summary judgment stage. Accordingly, the Court finds that qualified immunity applies to the individual Defendants here. Therefore, Defendants' motion for summary judgment is GRANTED as to the individual Defendants'.

### 2. Municipal Federal Civil Rights Liability

Consistent with the Court's finding above, the Court agrees with Defendants that Plaintiff has not established a pattern of constitutional violations stemming from the failure to install fencing alone. Accordingly, Plaintiff's *Canton* claim fails and Defendants' motion for summary judgment is GRANTED as to Plaintiff's *Canton* claim. However, Defendants' motion for summary judgment is DENIED as to Plaintiff's *Monell* and failure to train claims as Plaintiff has raised genuine disputes regarding the County's inadequate policies and the County's recognition of its' failure to train employees who encounter inmates with mental health issues and are likely to attempt suicide.

15

3:15-cv-2232-L-AGS

## IV. CONCLUSION & ORDER

For the foregoing reasons, the Court orders as follows:

- Dr. Naranjo's motion for summary judgment [ECF No. 107] is **GRANTED**;
- Dr. Malaguti's motion for summary judgment [ECF No. 108] is **GRANTED**;
- Plaintiff's motion for partial summary judgment [ECF No. 109] is **DENIED**;
- The motion for summary judgment filed by Defendants County of San Diego and the remaining individual defendants is **GRANTED IN PART** and **DENIED IN PART**.
- Plaintiff's § 1983 claims grounded in the County's lack of or inadequate policies and a failure to train against the Defendant County of San Diego remain to the extent the claim is not based on conditions of Thomas' confinement. Conversely, Plaintiff's § 1983 and negligence claims against individual Defendants are dismissed.

**IT IS SO ORDERED.**

Dated: May 2, 2019

Hon. M. James Lorenz
United States District Judge